**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| TRISTIAN COLEMAN, JACQUELINE GIBSON, & THEIR MINOR SON ("The Coleman Family")<br>*Plaintiffs*,<br>v.<br>UNITED STATES OF AMERICA ("USA")<br>*Defendant*. | Action No. 1:26-cv-11325 |

**PLAINTIFFS COLEMAN'S**
**FEDERAL TORT CLAIMS ACT (FTCA) COMPLAINT**

**WHEREFORE**–pursuant to Local Rule 40.4, Plaintiffs, TRISTIAN COLEMAN, JACQUELINE GIBSON, & THEIR MINOR SON ("Plaintiffs" and/or "The Coleman Family"), by and through their Undersigned attorney ("Plaintiffs' Counsel"), brings these federal claims of violation of Plaintiffs' rights as protected by the United States Constitution, federal law, and/or the laws of the United States, specifically Illinois law, against Defendant UNITED STATES OF AMERICA ("United States" or "USA") pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346 et al. Plaintiffs claims as follows:

A. Jurisdiction and Venue

1. Plaintiffs brings their action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346 et al, which confers exclusive jurisdiction over civil actions against the United States due to federal employees acting under the scope of federal employment, where the USA would be liable under applicable state law if it were a private person.
2. This Federal Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), and § 1367 (supplemental jurisdiction) over claims arising under Illinois law.
3. Venue is proper under 28 U.S.C. § 1402 given the February 2024 ordeal and underlying events at 8469 W. Grand Ave, River Grove, Illinois 60171 ("February 2024 Joint Raid at Issue") occurred within the Northern District of Illinois hereof pursuant to 28 U.S.C. § 1391, administrative exhaustion under 28 U.S.C. § 2675, and timely filing after final administrative denial (further defined) under 28 U.S.C. § 2401.
4. This case is related to and arises from the exact same February 2024 Joint Raid filed herein as in follows: Coleman v. U.S., No. 25-CV-296, 2025 WL 2590387, 2025 U.S. Dist. LEXIS 174506 (N.D. Ill. 2025).

a. Hence, the constitutional claims against the five (5) individual federal officers ("Great Lakes Regional Fugitive Task Force" or "GLRFTF") and other defendants (i.e. Landlord) are being litigated separately and do not concede that this FTCA claim is the exclusive remedy for those constitutional violations.

B. Parties

5. The Coleman Family are United States citizens, are residents within their District in the State of Illinois, and were lawful tenants at the Property on February 22, 2024.
   a. Tristian Coleman, both as an individual adult and on behalf of his minor son;
   b. Jacqueline Gibson, both as an individual adult and on behalf of her minor son;
   c. T. Coleman, a minor, represented by and through Tristian Coleman and Jacqueline Gibson, as their child and next of kin in accordance with Rule 10(a).
6. Defendant USA as proper defendant under 28 U.S.C. § 1402 and § 1346 and is the sole proper defendant under the FTCA for torts committed by federal employees acting within the scope of their federal employment.
   a. At all relevant times, GLRFTF were employees and/or agents of Defendant acting under the scope of their federal employment and official duties.
   b. USMS is a "federal agency" within the meaning of 28 U.S.C. § 2671; the agency itself is not a defendant.

C. Procedural Requirements

7. Plaintiffs exhausted all required administrative remedies and has satisfied all procedural prerequisites prior to bringing their claims.
8. **March 20, 2024**: *Plaintiffs' Administrative Efforts*.
   a. Plaintiffs submitted a detailed Freedom of Information Act (FOIA) request, 2024-USMS-FOIA/PA000123 regarding the February 2024 Joint Raid at Issue ("Plaintiffs' March 20th FOIA Request"), which the U.S Department of Justice, USMS, Office of General Counsel (appropriate federal agency defined as "USMS FOIA") confirmed receipt of Plaintiffs' March 20th FOIA Request on March 29, 2024;
   b. *FTCA Presentment Date #1*: Plaintiffs presented a "Complaint Regarding United States Marshals Service (USMS) Personnel or Programs" regarding the February 2024 Joint Raid at Issue ("Plaintiffs' March 20th USMS

Administrative Complaint"), referencing Plaintiffs' March 20th FOIA request for supporting documentation as an administrative claim to USMS, which the USMS, Office of Professional Responsibility (OPR), Internal Affairs (appropriate federal agency defined as "USMS OPR IA"), confirmed receipt of Plaintiffs' March 20th USMS Administrative Complaint that same day on March 20, 2024.

9. **March 28, 2024**: Plaintiffs requested body worn camera footage of the February 2024 Joint Raid at Issue ("Plaintiffs' March 28th Additional Due Diligence Request"), which the USMS, Office of General Counsel – Body Warn Camera (BWC) Group (appropriate federal agency defined as "BWC Group") confirmed receipt of Plaintiffs' March 28th Additional Due Diligence request that same day on March 28, 2024.

10. **May 2, 2024**: Plaintiffs corresponded and followed up with USMS regarding Plaintiffs' March 20th USMS Administrative Complaint via phone to 773-475-5820 and received return calls from 312-446-1571 and 000-000-0000. Task Force Supervisor Heather Ulrich, Chief Mike Hawkins or Woodhouse & Richard Manning of USMS confirmed body camera footage of the February 2024 Joint Raid at Issue and no warrant for Plaintiffs. ("Plaintiffs' May 2nd Phone Conversation with USMS").

11. **June 30, 2024**: *FTCA Presentment Date #2:* Plaintiffs submitted a detailed administrative claim regarding the February 2024 Joint Raid at Issue online and reported USMS to the Department of Justice Office of Inspector General (appropriate federal agency defined as "DOJ OIG") ("Plaintiffs' June 30th Additional USMS Administrative Claim").

12. **July 9, 2024**: *FTCA Presentment Date #3:* Plaintiffs repeated Plaintiffs' March 20th FOIA Request, Plaintiffs' March 20th USMS Administrative Complaint, Plaintiffs' March 28th Additional Due Diligence Request, and Plaintiffs' June 30th Additional USMS Administrative Claim, detailing the ordeal and injuries to Plaintiffs and requested a firm amount of damages for the February 2024 Joint Raid at Issue ("Plaintiffs' July 9th Final Correspondence Before Filing").

13. **August 26-27, 2024**: *Video evidence*. USMS FOIA complied with Plaintiffs' March 20th FOIA Request, which are three (3) redacted videos of the February 2024 Joint Raid at Issue, supporting Plaintiffs' March 20th USMS Administrative Complaint,

Plaintiffs' March 28th Additional Due Diligence Request, Plaintiffs' May 2nd Phone Conversation with USMS, Plaintiffs' June 30th Additional USMS Administrative Claim, Plaintiffs' July 9th Final Correspondence Before Filing, and this federal complaint filing.

14. **October 1, 2024**: Plaintiffs have not received a response regarding Plaintiffs' March 20th USMS Administrative Complaint (including Plaintiffs' July 9th Final Correspondence Before Filing) from USMS OPR IA as the appropriate federal agency nor within six (6) months.
15. **November 11-27, 2024**: Plaintiffs followed up with USMS OPR IA on Plaintiffs' March 20th USMS Administrative Complaint (including Plaintiffs' July 9th Final Correspondence Before Filing). USMS OPR IA sole and only response to Plaintiffs was: "The U.S. Marshals Service (USMS) Office of Professional Responsibility, Internal Affairs (OPR-IA) does not provide information on investigations."
16. **December 31, 2024**: Plaintiffs has not received a response regarding Plaintiffs' June 30th Additional USMS Administrative Claim from DOJ OIG as the appropriate federal agency within six (6) months.
17. **January 10, 2025**: Plaintiffs' March 20th USMS Administrative Complaint to USMS OPR IA and Plaintiffs' June 30th Additional USMS Administrative Claim (including Plaintiffs' July 9th Final Correspondence Before Filing) to DOJ OIG as the appropriate federal agencies has been left without response nor action for more than six (6) months since the February 2024 Joint Raid at Issue, permitting Plaintiffs' federal complaint filing and suit to be instituted without final action on the claim.
18. **2025 – Present**: Coleman v. U.S., No. 25-CV-296, 2025 WL 2590387, 2025 U.S. Dist. LEXIS 174506 (N.D. Ill. 2025).
19. **February 9, 2026**: *FTCA Presentment Date #4*: Plaintiffs presented a fourth administrative claim –two (2) February 9, 2026 SF-95 Form from Plaintiffs Tristian Coleman and Jacqueline Gibson ("Plaintiffs' February 9th SF-95 Form") (collectively, Plaintiffs' March 20th USMS Administrative Complaint to USMS, Plaintiffs' June 30th Additional USMS Administrative Claim, Plaintiffs' July 9th Final Correspondence Before Filing, and Plaintiffs' February 9th SF-95 Form are "FTCA Presentment Dates."

20. **April 8, 2026**: Over two (2) years after the accrual of claim statute of limitations period–USMS OPR IA denied Plaintiffs' March 20th USMS Administrative Complaint to USMS OPR IA as the final administrative denial.
21. To date, Plaintiffs never received a response from DOJ OIG regarding Plaintiffs' June 30th Additional USMS Administrative Claim to DOJ OIG.
22. All of Plaintiffs' administrative claims were presented in writing either via email or online through government websites, within two (2) years of the accrual of the claim.
23. This new action is being filed after the final administrative denial. Plaintiffs therefore filed this claim after final administrative denial and within six (6) months of the final administrative denial, as required by 28 U.S.C. § 2675(a) and § 2401(b) Therefore, Plaintiffs' exhaustion requirement is satisfied.

D. Facts Common to All Counts

24. This action arises from a February 2024 Joint Raid at Issue conducted by federal law enforcement officers of Great Lakes Regional Fugitive Task Force (repeated as "GLRFTF") on February 22, 2024.
25. *Who lived the Property?* Plaintiffs were lawful tenants; The Coleman Family and Landlord entered in a valid two (2)-year "Apartment Lease Agreement" dated March 9, 2023 ("Lease") regarding Plaintiffs' Private Property at 8469 W. Grand Ave, River Grove, IL 60171 ("Plaintiffs' Property" or "Property").
26. Landlord retained copies of all legal identification of The Coleman Family, collectively as tenants and lawful occupants, during and after execution of the Lease (further defined as "Lease").
27. To access the Property, one must enter into the parking lot with assigned spaces heavily monitored by towing threats, then have access to the secured front entrance via a four (4)-digit keypad passcode, walk up to the third floor, and possess two (2) keys to the locked front and back doors (collectively, "keys and access to the Property" or "both a private keypad code password and two (2) keys").
28. *Why did GLRFTF come to the Property?* GLRFTF may have or allegedly presented a warrant of Suspect (further identified and defined) to Landlord on February 22, 2024.
29. GLRFTF did not present a warrant listing any of The Coleman Family to either Landlord nor The Coleman Family, because no such warrant exists or has ever existed.

30. The Coleman Family is informed and believes that the alleged warrant did not identify any member of The Coleman Family, but rather a different African American male with a similar "locs" hairstyle ("Suspect").
31. The Coleman Family learned GLRFTF pursed the alleged USMS warrant, listing "Joseph Jackson"–a name that is not on the Lease (further defined as "Suspect").
32. Landlord provided keys and access to the Property to GLRFTF without conducting due diligence or verifying the Lease and records, which would have confirmed that the Suspect of the alleged warrant was not listed as a tenant or authorized occupant and to caution GLRFTF avoiding that specific Property of Plaintiffs (further defined as "February 2024 Joint Raid at Issue" and "Landlord Misconduct").
33. *The February 2024 Joint Raid at Issue Begins Now*. On February 22, 2024, around 5:30pm, GLRFTF entered through both the four-digit keypad front entrance and locked back door, using keys and access provided by Landlord, and approached the Property (further defined as "keys and access to the Property" and also "February 2024 Joint Raid at Issue").
34. Disguised GLRFTF banged on The Coleman Family's front door and yelled twice: "Police! U.S. Marshal Service! Arrest Warrant! Come to the Door!"
35. Alone, Plaintiff Tristian Coleman ("Plaintiff") was showering, unclothed, and hurriedly wrapped himself in a towel before immediately rushing to the front door to look through the peephole –heart beating fast.
36. Through the peephole, Plaintiff observed approximately five (5) USMS officers (formerly known as the "Five (5) Unknown" but now collectively, "GLRFTF"), wearing plain clothes and brandishing various firearms with shields drawn.
37. Plaintiff immediately denied consent stating, "Wrong Apartment", but GLRFTF nevertheless intimidated and demanded Plaintiff to open their front door.
38. GLRFTF simultaneously inserted the key provided by Landlord into the front door lock. Plaintiff could hear the key being turned and sensed a key being used in their door — confirming that GLRFTF intended to further enter regardless of Plaintiff's objections ("GLRFTF's Gross Misconduct").
39. Fearing forced entry, Plaintiff, still in only a towel, complied and opened the door, immediately said his name, "Tristian Coleman" –not Suspect's name.

40. *What happened when Plaintiff opened the door?* GLRFTF instantly used excessive force, seizing Plaintiff as soon as he opened the front door and identified himself
41. Plaintiffs did not provide consent.
42. GLRFTF did not present a warrant to Plaintiff.
43. GLRFTF's Gross Misconduct continues.
44. *The Deprivation/Detention & Handcuffing/Seizure*. As Plaintiff froze, GLRFTF physically pulled Plaintiff, barefoot and dripping wet, out of Plaintiffs' Property as their home into the common hallway, while pointing a large assault rifle directly at Plaintiff's face, leaving the front door open.
45. GLRFTF immediately arrested and seized Plaintiff into the common hallway in front of the Neighboring Property ("Neighbor").
46. The Coleman Family's front door remained open, further exposing their private residence as the Property to the public.
47. *The Firearms*. Although Plaintiff never posed a threat at any time, GLRFTF's guns were loaded, aimed at Plaintiff, and their fingers remained on the triggers the entire time, creating an imminent risk of deadly force.
48. GLRFTF did not present a warrant to Plaintiff.
49. Plaintiff did not, and has never, freely consented to the GLRFTF's warrantless and non-probable cause entry onto the Coleman Family's Property.
50. *The Entry*. Yet, GLRFTF continued to enter Plaintiffs' Property regardless of their express objections and discontent.
51. Upon entry, a 30 x 40 canvas portrait of The Coleman Family was clearly visible and prominently displayed on the wall facing the front door.
52. The legal identification and names of all three (3) members of The Coleman Family pictured are also listed in the Lease provided to and with Landlord.
53. Upon GLRFTF's entry, Plaintiff repeatedly stated his name, directed GLRFTF to locate his wallet containing his legal government-issued identification inside his red coat, affirmed that he did not know Suspect, and informed that their Property was unoccupied until remaining members of The Coleman Family returned home.
54. Plaintiff further referenced the huge canvas portrait of The Coleman Family as proof that only three (3) individuals—none of whom were Suspect—resided at their home.

55. *The Search*. Nonetheless, GLRFTF brought a police search dog into The Coleman Family's Property, despite repeated warnings of illegally raiding the wrong Property.
56. GLRFTF and the police search dog unlawfully searched The Coleman Family's Property, including the main bedroom, conjoined bathroom, and their toddler's son's bedroom and bathroom, repeatedly — over three (3) times — without presenting a warrant nor probable cause for the illegal search and seizure (further defined as "February 2024 Joint Raid at Issue").
57. While barefoot, still wet, and handcuffed in only a towel, Plaintiff was forced to remain in the common hallway, guarded by (one of the) GLRFTF for the duration of the entire February 2024 Joint Raid at Issue.
58. While detained in the common hallway, Plaintiff was again questioned about Suspect.
59. Plaintiff repeatedly stated his name, offered to present legal identification again, and reminded GLRFTF that The Coleman Family are the only lawful tenants and legal occupants of the Property pursuant to the Lease with Landlord.
60. Plaintiff further reiterated that he does not know Suspect, that no one by Suspect's name resides at the Coleman Family's Property, that Plaintiffs' Property was momentarily unoccupied for an hour.
61. Plaintiff repeatedly protested that GLRFTF were illegally raiding the wrong Property.
62. At no time did GLRFTF present a warrant to Plaintiff.
63. *Where's the warrant?* During the February 2024 Joint Raid at Issue, Plaintiff inquired about and requested the names and badge numbers of the GLRFTF.
64. GLRFTF refused to provide such information upon Plaintiff's repeated requests.
65. Next, Plaintiff inquired about a search warrant.
66. (One of the) GLRFTF in the common hallway with Plaintiff replied, "We don't know what to tell you [about a search warrant]. We will have you ready; just wait right here."
67. While detained, Plaintiff observed through the hallway window that neighbors and guests had gathered outside or on balconies, staring at him, compounding humiliation and emotional distress.
68. Plaintiff saw that Landlord personally witnessed the unreasonable February 2024 Joint Raid at Issue and unlawful actions against Plaintiffs, yet failed to intervene or protect Plaintiffs despite having the opportunity to do so.

69. Around 5:50pm, GLRFTF escorted Plaintiff back into The Coleman Family's Property and removed the handcuffs off of Plaintiff, while GLRFTF remained present inside Plaintiffs' Property (further defined as "February 2024 Joint Raid at Issue").
70. Plaintiff again inquired about the names and badge numbers of the GLRFTF, as well as the search warrant.
71. Instead of responding, GLRFTF diverted the conversation and changed the subject to ask personal questions regarding information about Plaintiff's prior addresses and family members, which Plaintiff further complied and answered.
72. As Plaintiff reached for his legal identification, GLRFTF refused to review and acknowledge such proof to instead show Plaintiff, not a warrant, but a picture of Suspect, ironically an African American male with the "locs" hairstyle as Plaintiff.
73. GLRFTF's picture of Suspect was, in fact, the first time Plaintiff had ever seen Suspect.
74. Plaintiff repeated that he did not recognize nor know Suspect.
75. Further inquiries were exchanged, but GLRFTF never provided clear responses to any of Plaintiff's questions, especially and particularly regarding the search warrant.
76. At no time did GLRFTF ever present a warrant to Plaintiff.
77. GLRFTF never had proper consent, probable cause nor exigent circumstances to seize Plaintiff nor search The Coleman Family's Property.
78. During their interaction, majority of the GLRFTF finally began to exit Plaintiffs' Property, ending the February 2024 Joint Raid at Issue.
79. At approximately 5:50pm, GLRFTF did not use a key, but politely knocked on Neighbor's front door.
80. Plaintiff witnessed GLRFTF knocked on the Neighbor's door, rather than using a key, to which Neighbor answered.
81. Neighbor admitted to coincidentally being on federal house arrest probation in Northern Illinois and provided information about their probation officer.
82. However, Neighbor denied GLRFTF consent to search their Property without a warrant, stating that Suspect was not in their Property, and subsequently closed their door shut to GLRFTF.

83. Next, Plaintiff observed GLRFTF then dispersed to about eight (8) cars parked in ascertain assigned spots in the heavily monitored parking lot outside of The Coleman Family's Property.

84. After GLRFTF left, Plaintiff called his wife at 5:51pm to inform her about the February 2024 Joint Raid at Issue with GLRFTF/the police search dog in Plaintiffs' Property.

85. Around 6:20pm, GLRFTF returned.

86. Plaintiff was alert and witnessed GLRFTF instead returning to Neighbor's Property without using a key.

87. *The Duration.* Although GLRFTF raided The Coleman Family's Property for more than twenty (20) minutes, GLRFTF never entered the Neighbor's Property at all.

88. In under two (2) minutes, GLRFTF yelled, banged on Neighbor's front door, which Neighbor opened again, and immediately pulled Suspect out of Neighbor's Property.

89. Around 6:25pm, GLRFTF correctly arrested Neighbor and Suspect, an also African American male, but unlike Neighbor, with the "locs" hairstyle like Plaintiff. Still, there were clear discrepancies between Plaintiff and the Suspect.

90. The warrantless search, without consent, probable cause, nor exigent circumstances, deprivation, pointed loaded firearms at a barefooted Plaintiff, seizure, handcuffed Plaintiff Tristian Coleman, detained him outside while wet and partially clothed, unlawful entry, utilized a police canine, ignored repeated requests to verify his identification, repeatedly searched the residence illegally, and continued the search and seizure despite evidence that Plaintiffs were not the subject of the arrest warrant nor pictured evidence of Suspect presented by GLRFTF is collectively defined as "GLRFTF's Gross Misconduct."

91. *The Beginning of The End*. After the proper arrest of Suspect, Plaintiff briefly experienced a limited sense of relief, overshadowed by ongoing negative feelings of embarrassment, apprehension, distress, humiliation, oppression, trauma, and thoughts of racial profiling.

92. In addition to the lack of warrant, GLRFTF left the Property with no apology nor explanation to Plaintiffs (further defined as "GLRFTF's Gross Misconduct").

93. *Landlord's Misconduct Confronted*. Despite witnessing the February 2024 Joint Raid at Issue, Landlord never acknowledged the February 2024 Joint Raid at Issue to Plaintiffs' Property until confronted by The Coleman Family in May 2024.

94. On May 1, 2024, despite knowledge of a recent car accident coupled with the February 2024 Joint Raid at Issue, Landlord had Plaintiffs' emergency vehicle towed, adding additional stress to Plaintiffs on the day that rent is due.

95. On May 2, 2024, Plaintiff's wife, Plaintiff Jacqueline Gibson ("Plaintiff") spoke with Landlord via telephone at 773-328-8038. ("Plaintiffs' May 2nd Phone Conversation with Landlord").

96. During the call, Landlord insulted Plaintiffs and admitted to providing keys and access to The Coleman Family's Property to GLRFTF, stating verbatim "for them to arrest [your] husband, [Suspect's name]" – a name that does not appear on the Lease and is not belonging to any member of The Coleman Family.

97. In addition to the illegal raid, the February 2024 Joint Raid at Issue was also an unfortunate experience of racial profiling and mistaken identity based on race and hairstyle as a determinative factor.

98. After Plaintiffs' May 2nd Phone Conversation with Landlord, Landlord continued to ignore The Coleman Family's further contact attempts and refused to schedule a meeting to address the February 2024 Joint Raid at Issue on Plaintiffs' Property.

99. Landlord continued to act as though the February 2024 Joint Raid at Issue never occurred throughout the remainder of the Lease until April 2025.

100. *GLRFTF's Gross Misconduct Confronted*. Plaintiffs satisfied the FTCA's administrative-exhaustion requirement. Plaintiffs presented two (2) written administrative claims to the appropriate federal agency concerning the February 2024 Joint Raid at Issue, GLRFTF's Gross Misconduct, and the injuries and damages resulting from that ordeal.

101. In accordance with the Procedural Requirements herein at Section C, Plaintiffs further provided detailed written correspondence and supporting information concerning February 2024 Joint Raid at Issue, including the circumstances of the entry into Plaintiffs' Property, the seizure and detention of Plaintiff Tristian Coleman, the unlawful search of their Home, and Plaintiffs' resulting injuries and damages to both

appropriate federal agencies at least four (4) separate times beginning on March 20, 2024, June 30, 2024, July 9, 2024 and February 9, 2026 (further and collectively defined as "FTCA Presentment Dates")

102. Plaintiffs' administrative claims provided the United States with sufficient written notice of the facts and injuries underlying this action to permit investigation and administrative evaluation of the claims. Plaintiffs are not required to have identified every legal theory ultimately asserted in this action so long as the facts presented administratively fairly encompassed the claims asserted here.

103. On April 8, 2026, the United States Marshals Service issued its written final denial of Plaintiffs' administrative claims.

104. Plaintiffs do not rely upon constructive denial or administrative inaction as the basis for exhaustion in this action. Plaintiffs rely upon the agency's final written denial issued on April 8, 2026.

105. *Birthday Surprise! The February 2024 Joint Raid at Issue*. The entire ordeal of the February 2024 Joint Raid at Issue could have been avoided and completely ruined Plaintiffs' 31st birthdays both coincidentally on February 22, 2024, and left lasting emotional and psychological damage as an ongoing traumatic reminder for each of their upcoming birthdays on February 22nd.

<u>E. Claims of Relief</u>

106. *A Preview of the Aftermath.* As a direct result of the February 2024 Joint Raid at Issue, The Coleman Family, now suffer severe, long-term, emotional and psychological distress, including symptoms consistent with post-traumatic stress disorder (PTSD). Plaintiffs suffers physical, emotional, and financial harm, including loss of enjoyment and sanctity of The Coleman Family's home, loss of dignity due to lack of due process, especially of Property at minimum, combined with disrespect of racial profiling, property loss and damage, distress, invasion of privacy, pervasive fear and anxiety, severe mental anguish and trauma, humiliation, loss of sleep, and continuing expenses for protection purposes and psychological and emotional distress as further disclosed in Plaintiffs' February 9th SF-95 Form, impacting The Coleman Family.

107. Plaintiffs seek recovery from the United States for the common-law torts committed by GLRFTF acting within the scope of their federal employment based on facts:

a. Plaintiff Tristian experienced fear, humiliation, apprehension, emotional distress, anxiety, and trauma from being seized at gunpoint inside his own home while wearing only a towel.

b. Plaintiff experienced the terror of having loaded firearms pointed at him despite his repeated efforts to establish that he was not the suspect.

c. Plaintiff experienced additional humiliation when he was handcuffed and detained barefoot and partially unclothed in the common hallway while landlord, neighbors and guests observed him.

d. Plaintiff experienced distress from watching armed GLRFTF search his private residence and the private living spaces of his family, including his minor child's bedroom and bathrooms.

e. Plaintiffs experienced continuing emotional distress associated with the invasion of their home, the knowledge that GLRFTF had obtained keys to their residence, and the realization that their private home had been entered and searched despite Plaintiffs not being the intended Suspect.

f. Plaintiffs experienced loss of the sense of safety, privacy, and sanctity of their person and home.

g. Plaintiffs suffered emotional and psychological injuries, including severe anxiety, humiliation, fear, loss of sleep, and symptoms consistent with trauma and post-traumatic stress.

h. This ordeal continues to affect Plaintiffs' sense of safety within their home and their reaction to unexpected knocking, banging, and law-enforcement activity.

i. Plaintiffs suffered additional damages resulting from the invasion and loss of the normal use, enjoyment, privacy, and security of their home.

j. Plaintiffs' injuries were the direct and proximate result of the wrongful acts and omissions of the GLRFRF federal officers.

108. Plaintiffs do not bring constitutional claims against the Defendant USA under the FTCA. Plaintiffs' separate constitutional claims against individual federal officers as GLRFTF arise in Plaintiffs' related action, Coleman v. United States, No. 25 C 296 (N.D. Ill.), and are not asserted as claims against the United States in this action.

109. **Count I** – FEDERAL TORT CLAIMS ACT (FTCA) AGAINST DEFENDANT USA — NEGLIGENCE AND WRONGFUL ACTS

a. Plaintiffs incorporates each and all preceding paragraphs of Section D (Facts Common to All Counts) herein their Complaint as though fully set forth herein and incorporate by reference as restated fully herein.

b. To the extent required, Plaintiffs has satisfied or is deemed to have satisfied all jurisdictional prerequisites to suit, including presentment and final denial or constructive denial under 28 U.S.C. § 2675(a).

c. At all relevant times, GLRFTF were employees of the United States, acting within the scope of their federal employment and under color of federal authority in accordance with FTCA.

d. Under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., Defendant USA is liable under circumstances where a private person would be liable under the law of the State of Illinois for the negligent or wrongful acts or omissions of its employees acting within the scope of employment.

e. Under Illinois law, persons exercising control over others and engaging in conduct that foreseeably creates a risk of physical or emotional injury must exercise reasonable care under the circumstances.

f. GLRFTF owed Plaintiffs duties to exercise reasonable care in identifying the residence and Suspect subject to the alleged warrant and arrest operation, in entering Plaintiffs' Property, in determining whether lawful authority existed to search and seize Plaintiffs, and in terminating the operation once information established that Plaintiffs were not the intended Suspect.

g. GLRFTF's federal officers breached those duties.

h. Among other things, GLRFTF's Gross Misconduct consisted of:

i. entered Plaintiffs' private residence despite Plaintiffs' express objection and lack of proper consent;

ii. entered and searched the wrong residence;

iii. failed to adequately verify that Plaintiffs' Property was the residence of the Suspect identified in the alleged warrant;

iv. continued the unlawful seizure, detention, and operation after Plaintiff immediately identified himself and established that he was not the suspect with proof GLRFTF ignored;

v. failed to reasonably evaluate readily available identifying information;

vi. detained Plaintiff after receiving repeated information that he was not the Suspect;

vii. used unnecessary deadly *and* excessive force against Plaintiff Tristian Coleman—the head of the Family;

viii. pointed loaded firearms at an unarmed and non-threatening Plaintiff;

ix. continued repeatedly searching Plaintiffs' Property despite the absence of any lawful basis alleged to Plaintiffs;

x. searched the private bedrooms and bathrooms of Plaintiffs and their minor child;

xi. failed to promptly terminate the search and detention after the mistake became apparent; and

xii. using race a shortcut identifier despite clear discrepancies between Plaintiff and Suspect;

xiii. otherwise acted unreasonably under the circumstances.

i. The challenged conduct was operational conduct in the execution of the raid, not a challenge to governmental policy formulation.

j. Plaintiffs do not seek to impose liability based merely upon the discretionary decision to investigate or pursue a fugitive.

k. Plaintiffs seek recovery for GLRFTF's Gross Misconduct and wrongful conduct after they entered Plaintiffs' Home and received direct, repeated, and readily verifiable information establishing that Plaintiffs were not the intended Suspect. What is there to hide?

l. GLRFTF's Gross Misconduct was not reasonable care in the execution of a lawful law-enforcement operation.

m. In the alternative, to the extent Illinois law requires a heightened showing for liability arising from law-enforcement conduct, GLRFTF's Gross Misconduct was willful and wanton.

n. GLRFTF acted with actual or deliberate disregard for Plaintiffs' safety and property and, at minimum, with conscious disregard for the obvious risk of serious harm created by continuing to detain an innocent person at gunpoint and searching his home after being repeatedly informed that he was not the Suspect.

o. Plaintiffs was directly harmed by the unlawful actions of the February 2024 Joint Raid at Issue and GLRFTF's Gross Misconduct during the February 2024 Joint Raid at Issue against The Coleman Family, for which USA is responsible and liable for those torts under the FTCA.

p. As a direct and proximate result, Plaintiffs suffered physical, emotional, psychological, property, privacy, and other legally compensable damages.

q. The United States is therefore liable to Plaintiffs under the FTCA.

110. **Count II** – FEDERAL TORT CLAIMS ACT (FTCA) AGAINST DEFENDANT USA — ASSAULT AND BATTERY

a. Plaintiffs incorporates each and all preceding paragraphs of Section D (Facts Common to All Counts) herein their Complaint as though fully set forth herein and incorporate by reference as restated fully herein.

b. To the extent required, Plaintiffs has satisfied or is deemed to have satisfied all jurisdictional prerequisites to suit, including presentment and final denial or constructive denial under 28 U.S.C. § 2675(a).

c. At all relevant times, GLRFTF were employees of the United States, acting within the scope of their federal employment and under color of federal authority within the meaning of 28 U.S.C. § 2680(h).

d. Under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., Defendant USA is liable under circumstances where a private person would be liable under the law of the State of Illinois for the negligent or wrongful acts or omissions of its employees acting within the scope of employment.

e. Section 2680(h) expressly permits FTCA claims arising from assault and battery committed by investigative or law-enforcement officers of the United States Government.

f. Under Illinois law, battery includes intentional physical contact with another person that is harmful or offensive and without legal justification.

g. GLRFTF intentionally seized and physically pulled Plaintiff Tristian Coleman from Plaintiffs' Property into the common hallway.

h. GLRFTF intentionally seized and handcuffed Plaintiff.

i. GLRFTF intentionally detained and restrained Plaintiff while armed officers remained in control of the Property.

j. GLRFTF intentionally pointed loaded firearms at Plaintiff while he was unarmed, non-threatening, barefoot, wet, and wearing only a towel as excessive and deadly force.

k. The physical seizure and restraint were harmful and offensive.

l. Plaintiff did not consent to the physical seizure or restraint.

m. GLRFTF lacked lawful justification to continue the physical seizure and restraint after Plaintiff identified himself, repeatedly explained that he was not the suspect, and offered government-issued identification.

n. GLRFTF's Gross Misconduct was willful and wanton and demonstrated conscious disregard for Plaintiff's safety.

o. Plaintiffs therefore state an FTCA claim against the United States for assault and battery to the extent permitted by 28 U.S.C. § 2680(h) and Illinois law.

p. As a direct and proximate result, Plaintiffs suffered compensatory damages.

111. **Count III** – FEDERAL TORT CLAIMS ACT (FTCA) AGAINST DEFENDANT USA — FALSE ARREST AND FALSE IMPRISONMENT

a. Plaintiffs incorporates each and all preceding paragraphs of Section D (Facts Common to All Counts) herein their Complaint as though fully set forth herein and incorporate by reference as restated fully herein.

b. To the extent required, Plaintiffs has satisfied or is deemed to have satisfied all jurisdictional prerequisites to suit, including presentment and final denial or constructive denial under 28 U.S.C. § 2675(a).

c. At all relevant times, GLRFTF were employees of the United States, acting within the scope of their federal employment and under color of federal authority within the meaning of 28 U.S.C. § 2680(h).

d. Under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., Defendant USA is liable under circumstances where a private person would be liable under the law of

the State of Illinois for the negligent or wrongful acts or omissions of its employees acting within the scope of employment.

e. Section 2680(h) expressly permits FTCA claims arising from false arrest and false imprisonment committed by investigative or law-enforcement officers of the United States Government.

f. Under Illinois law, false arrest and false imprisonment require an unlawful restraint or arrest without reasonable grounds to believe that the person restrained committed an offense.

g. Plaintiff Tristian Coleman was restrained and arrested when GLRFTF seized him, handcuffed him, and detained him in the common hallway.

h. Plaintiff is not Suspect Joseph Jackson.

i. Plaintiff was not the person named in the warrant GLRFTF were purportedly and allegedly executing.

j. Plaintiff had committed no offense that justified arrest or continued detention.

k. Plaintiff immediately identified himself.

l. Plaintiff repeatedly informed GLRFTF that they had the wrong apartment.

m. Plaintiff repeatedly informed GLRFTF that Suspect Joseph Jackson did not reside there.

n. Plaintiff repeatedly offered government-issued identification.

o. GLRFTF nevertheless continued to restrain Plaintiff.

p. GLRFTF maintained Plaintiff in handcuffs and under armed guard while they continued searching Plaintiffs' Property.

q. GLRFTF continued detention of Plaintiff after receiving repeated information establishing that he was not the Suspect was unreasonable and without lawful justification.

r. GLRFTF"s Gross Misconduct was willful and wanton and demonstrated conscious disregard for Plaintiff's liberty and safety.

s. As a direct and proximate result, Plaintiff suffered severe emotional and psychological distress, humiliation, fear, anxiety, loss of dignity, and other compensatory damages.

t. The United States is therefore liable under the FTCA.

112. **Count IV** – FEDERAL TORT CLAIMS ACT (FTCA) AGAINST DEFENDANT USA — TRESPASS AND INTRUSION UPON SECLUSION

a. Plaintiffs incorporates each and all preceding paragraphs of Section D (Facts Common to All Counts) herein their Complaint as though fully set forth herein and incorporate by reference as restated fully herein.

b. To the extent required, Plaintiffs has satisfied or is deemed to have satisfied all jurisdictional prerequisites to suit, including presentment and final denial or constructive denial under 28 U.S.C. § 2675(a).

c. At all relevant times, GLRFTF were employees of the United States, acting within the scope of their federal employment and under color of federal authority within the meaning of 28 U.S.C. § 2680(h).

d. Under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., Defendant USA is liable under circumstances where a private person would be liable under the law of the State of Illinois for the negligent or wrongful acts or omissions of its employees acting within the scope of employment.

e. Illinois law recognizes a cause of action for trespass where a person enters, or causes a third person or thing to enter, land possessed by another without permission, invitation, or other right.

f. Illinois law also recognizes the tort of intrusion upon seclusion where a defendant makes an unauthorized intrusion into another's private seclusion that would be offensive to a reasonable person and causes anguish and suffering.

g. Plaintiffs possessed and occupied their private residence as lawful tenants.

h. Plaintiffs did not consent to the GLRFTF's forced entry.

i. GLRFTF entered Plaintiffs' Home using keys and access from the Landlord.

j. GLRFTF entered despite Plaintiff Tristian's express statement that they had the wrong apartment.

k. GLRFTF searched Plaintiffs' private living spaces, bedrooms, bathrooms, and their minor child's bedroom and bathroom.

l. GLRFTF used a police search dog inside Plaintiffs' Home.

m. The intrusion lasted more than twenty (20) minutes and occurred despite repeated objections and evidence that Plaintiffs were not the intended Suspect.

n. The intrusion was unauthorized, highly offensive, and objectionable to a reasonable person.

o. Plaintiffs' Home and the private living spaces within it were among the most private domains in which Plaintiffs possessed a legitimate expectation of privacy and seclusion.

p. GLRFTF's Gross misconduct caused Plaintiffs anguish, humiliation, fear, emotional distress, and continuing loss of security and enjoyment of their home.

q. The United States is liable for the resulting damages to the extent permitted under the FTCA and Illinois law

113. Plaintiffs also preserves the right to assert any and all additional claims that may be protected by Federal and Illinois law that may be supported by the facts and law as further information is obtained through Discovery and consistent with Federal Rules of Civil Procedure as all facts and claims relate back under FRCP 15(c)(1)(B).

114. As a direct and proximate result of the United States' and GLRFTF as their federal employees' wrongful acts and omissions, Plaintiffs have suffered and continue to suffer damages, including but not limited to:

a. severe emotional and psychological distress;

b. anxiety, fear, humiliation, and trauma;

c. symptoms consistent with post-traumatic stress;

d. loss of sleep;

e. loss of privacy;

f. loss of dignity;

g. loss of the sense of safety and security within Plaintiffs' Home;

h. loss of use, enjoyment, and sanctity of Plaintiffs' Home;

i. marital issues occurring after the February 2024 Raid At Issue;

j. physical and emotional consequences arising from Plaintiff Tristian's seizure and detention as further disclosed in Plaintiffs' February 9th SF-95 Form;

k. expenses and other losses proximately resulting from the February 2024 Joint Raid at Issue; and

l. such additional damages as discovery and proof may establish and as are legally recoverable under the FTCA.

115. **WHEREFORE**, Plaintiffs respectfully requests this Federal Court for the following prayers of relief:

a. this Court enter judgment in Plaintiffs' favor against Defendant USA;

b. Plaintiffs seeks only an award for compensatory damages recoverable against the United States under the FTCA and applicable Illinois law to compensate for each of the four (4) claims in each and all preceding paragraphs of Section E (Claims of Relief) herein their Complaint as if fully set forth herein and incorporate by reference as if restated fully herein as injuries inflicted by Defendant, subject to the limitations of 28 U.S.C. § 2675(b);

c. Damages for Plaintiffs' physical, emotional, psychological, privacy, possessory, and other legally compensable injuries;

d. Plaintiffs do not seek punitive damages against Defendant USA;

e. Plaintiffs demands an award costs of suit;

f. such other further relief as the Court determines is permitted by law and deems appropriate, just and/or proper.

g. Plaintiffs do not seek any sum in excess of the amount presented administratively in their administrative claims, except to the extent expressly permitted by 28 U.S.C. § 2675(b);

Date: September 15, 2026

**CERTIFICATE OF SERVICE**

I, the Undersigned Attorney as Plaintiffs' Counsel, hereby certify that on September 15, 2026, I caused a true and correct copy of the foregoing Plaintiffs Coleman's FTCA Complaint to be filed with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record who have appeared for Defendants USA and are registered ECF users in this matter. The Undersigned further certifies that I will serve the foregoing to the U.S. Attorney, locally at Everett McKinley Dirksen in Northern District of Illinois, 219 S. Dearborn St., Ste 2444, Chicago, Illinois 60604-1834 in accordance with FRCP (4)(i)(2), by depositing said Complaint in the United States Postal Service via certified mailing and not via ECF filing system yet until completion of Process of Service through Certificate of Service on a pending upcoming date.

Date: September 15, 2026

/s/ Jacqueline D. Gibson, Esq. LL.M
Jacqueline D. Gibson

Date: September 15, 2026

Respectfully submitted,

**TRISTIAN COLEMAN,** *individually and on behalf of his minor son, collectively as,* THE COLEMAN FAMILY

/s/ ____________________

Tristian Coleman
9449 S. Kedzie Ave., #417
Evergreen Park, Illinois 60805
(312) 714 – 6806
colemantristian@yahoo.com

**JACQUELINE GIBSON,** *individually and on behalf of her minor son, collectively as,* THE COLEMAN FAMILY

/s/ ____________________

Jacqueline Gibson
9449 S. Kedzie Ave., #417
Evergreen Park, Illinois 60805
(773) 587 – 5050
jacquidgibson@gmail.com

**JACQUELINE D. GIBSON, ESQ. LL.M,** *attorney for Plaintiffs("Plaintiffs' Counsel)*

/s/ Jacqueline D. Gibson, Esq. LLM

Jacqueline D. Gibson
ARDC No (6332720)
9449 S. Kedzie Ave., #417
Evergreen Park, Illinois 60805
(773) 587 – 5050
jacquidgibson@gmail.com

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

**I. (a) PLAINTIFFS**
TRISTIAN COLEMAN, JACQUELINE GIBSON, & THEIR MINOR SON ("The Coleman Family")

**(b)** County of Residence of First Listed Plaintiff Cook
*(Except in U.S. plaintiff cases)*

**(c)** Attorneys *(firm name, address, and telephone number)*
Jacqueline D. Gibson, Esq. LL.M, 9449 S. Kedzie Ave.

**DEFENDANTS**
UNITED STATES OF AMERICA ("USA")

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

Attorneys *(If Known)*
VALERIE R. RAEDY. Assistant U.S. Attorney 219 S

**II. BASIS OF JURISDICTION** *(Check one box, only.)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government not a party.)*
☒ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate citizenship of parties in Item III.)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Check one box, only.)*

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans)
☐ 153 Recovery of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**PROPERTY RIGHTS**
☐ 820 Copyright
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729 (a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act (TCPA)
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Arts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 445 Amer. w/ Disabilities-Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition)
☐ 465 Other Immigration Actions

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAXES**
☐ 870 Taxes (U.S. Plaintiff or Defendant
☐ 871 IRS—Third Party 26 USC 7609

**V. ORIGIN** *(Check one box, only.)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District (specify)
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION** ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)
28 U.S.C. § 1346 - Federal Tort Claims Act (FTCA)

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

**VIII. REQUESTED IN COMPLAINT:** ☐ Check if this is a **class action** under Rule 23, F.R.CV.P. **Demand $4,000,000.00** **CHECK Yes only if demanded in complaint:** **Jury Demand:** ☐ Yes ☒ No

**IX. RELATED CASE(S) IF ANY** *(See instructions):* Judge Joan B. Gottschall Case Number: 25 C 296 - Coleman v. U.S.

**X. Is this a previously dismissed or remanded case?** ☐ **Yes** ☒ **No** **If yes, Case #** **Name of Judge**

**Date:** September 15, 2026 **Signature of Attorney of Record** s/ JACQUELINE D. GIBSON, ESQ. LL.M

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.